UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMON VINCENT JOBIN,<br><br>            Petitioner,<br><br>     v.<br><br>WARDEN, FCI-MENDOTA,<br><br>            Respondent. | No. 1:23-cv-01700-WBS-SKO (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY IN PART AND GRANT IN PART RESPONDENT'S MOTION TO DISMISS**<br><br>**[Doc. 7]** |

Petitioner is a federal prisoner proceeding *pro se* and *in forma pauperis* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He filed the instant petition on December 8, 2023. (Doc. 1.) Petitioner claims the Bureau of Prisons ("BOP") has wrongly determined the commencement of his credit earning ability under the First Step Act ("FSA"). He also claims the BOP wrongly disallowed 333 program days under the First Step Act from being applied to his sentence.

On February 12, 2024, Respondent filed a motion to dismiss the petition. (Doc. 7.) Respondent contends the petition should be dismissed for failure to exhaust, and alternatively, the petition should be denied on the merits. Petitioner did not file an opposition. Upon review of the pleadings, the Court finds Petitioner's arguments persuasive on the first claim, Respondent's arguments persuasive on the second claim, and will recommend the motion be DENIED IN PART and GRANTED IN PART.

1

**DISCUSSION**

**I.      Motion to Dismiss**

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). The Court will review the motion under Rule 4 standards. See Hillery, 533 F. Supp. at 1194 & n. 12.

**II.     Background**

Petitioner is serving a 292-month term of imprisonment for his conviction on one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(A)(1) and 846, and one count of conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(A)(1)(B)(i), (ii), and (H).  (Doc. 7-1 at 3-4.[1])  His projected release date is November 20, 2028, via First Step Act release. (Doc. 7-1 at 4.)  Per BOP's sentence calculations, Petitioner has accrued 841 program days and has been disallowed 333 days of credit.  The BOP has further determined that Petitioner has earned 30 FSA days to be applied towards prerelease custody and has earned 365 FSA days to be applied towards early transfer to supervised release. (Doc. 7-1 at 2, 6.)

According to the BOP's records of its Administrative Remedy Program, Petitioner has not submitted an Administrative Remedy Request concerning the claims presented.  (Doc. 7-1 at 3.)

**III.    The First Step Act**

The First Step Act was enacted on December 21, 2018, and implemented a number of prison and sentencing reforms, including computation of good time credits, reducing and restricting mandatory minimum sentences, safety valve eligibility, retroactive application of the Fair Sentencing Act, and the availability of early release. First Step Act of 2018, Pub. L. No. 115-

---

[1] Citations are to ECF pagination unless noted.

2

391, 132 Stat. 5194 (2018).  Prisoners "who successfully complete[ ] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A).  A prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii).

"Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release," Bottinelli v. Salazar, 929 F.3d 1196, 1198 (9th Cir. 2019), and provides that the "Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, shall issue guidelines for use by the Bureau of Prisons in determining the appropriate type of prerelease custody or supervised release and level of supervision for a prisoner placed on prerelease custody pursuant to this subsection," 18 U.S.C. § 3624(g)(6)(A).

**IV.    Exhaustion**

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies.  Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983).  The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement.  Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990).  Thus, "because exhaustion is not required by statute, it is not jurisdictional." Id.  If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."

The first step in seeking administrative remedies is a request for informal resolution. 28 C.F.R. § 542.13.  When informal resolution procedures fail to achieve sufficient results, the BOP makes available to inmates a formal three-level administrative remedy process: (1) a Request for

Administrative Remedy ("BP-9") filed at the institution where the inmate is incarcerated; (2) a Regional Administrative Remedy Appeal ("BP-10") filed at the Regional Office for the geographic region in which the inmate's institution is located; and (3) a Central Office Administrative Remedy Appeal ("BP-11") filed with the Office of General Counsel.  28 C.F.R. § 542.10 et seq.

Respondent states that Petitioner has never requested relief through the BOP's administrative remedy process concerning the instant claims.  Thus, the claims are unexhausted.  Ordinarily, the Court would dismiss the petition as a prudential matter.  See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).  Courts may require exhaustion if:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

United States v. Cal. Care Corp., 709 F.2d 1241, 1248 (9th Cir. 1983) (citing McGee v. United States, 402 U.S. 479, 484 (1971); McKart v. United States, 395 U.S. 185, 193–95 (1969); Stauffer Chemical Co. v. FDA, 670 F.2d 106, 107 (9th Cir. 1982), *overruled on other grounds by* Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014); Montgomery v. Rumsfeld, 572 F.2d 250, 253 (9th Cir. 1978)).  On the other hand, courts, in their discretion, may waive the exhaustion requirement in various situations, including "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."  Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation marks and citation omitted).

The Court finds that the administrative remedies process is not efficacious in this case and further pursuit would be futile because, as discussed below, Respondent is mistaken regarding when Petitioner can begin earning credits under 18 U.S.C. §§ 3585(d)(4)(B) and 3632(a).  Indeed, none of the reasons for requiring exhaustion are present in this case.

First, any agency expertise necessary to generate a proper record and reach a proper decision has been provided in Respondent's filings.  Second, the first claim relies on a mistaken interpretation of law.  Finally, administrative review in this case is not likely to allow the agency

4

to correct its own mistakes and preclude the need for judicial review because the Court disagrees with Respondent's reading of the FSA. The Court thus concludes that any further administrative review would not preclude the need for judicial review. The Court recommends excusing Petitioner's failure to exhaust administrative remedies.

**V.      Review of Claims**

        A.      Commencement of credit earning under First Step Act

Petitioner asserts that September 14, 2020 – the date he was sentenced in the South Dakota District Court – is the date that should have been used to calculate the commencement of his First Step Act credit earning.  He claims the BOP wrongly considered November 16, 2020 – the date he was received by the prison – as the start date.  Respondent disagrees and points to 28 C.F.R. § 523.42(a) as authority for using "the date the inmate arrives at the designated Bureau facility where the sentence will be served" as the date of commencement.  The Court finds that § 523.42(a) conflicts with the plain language of 18 U.S.C. §§ 3585(d)(4)(B) and 3632(a).

The BOP is authorized to compute a federal prisoner's sentence under 18 U.S.C. § 3585(b). Allen v. Crabtree, 153 F.3d 1030, 1033 (9th Cir. 1998).  Under 18 U.S.C. § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  Thus, a sentence to a term of imprisonment commences on either: (1) the date the defendant is received in custody awaiting transportation to the official detention facility at which the sentence is to be served; or (2) the date the defendant arrives voluntarily to commence service of sentence at the official detention facility at which the sentence is to be served.

Respondent contends that a petitioner is not eligible to earn First Step Act credits until he is actually received at the designated Bureau facility. Respondent cites 28 C.F.R. § 523.42(a), which provides:

> When an eligible inmate begins earning FSA Time Credits. An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).

5

This regulation conflicts with 18 U.S.C. § 3632.

Chapter 5, Part 523 of Title 28 of the Code of Federal Regulations ("C.F.R.") provides regulations on the "Computation of Sentence." Subpart E of Part 523 is titled "First Step Act Time Credits." The purpose of Subpart E "is to describe procedures for the earning and application of Time Credits as authorized by 18 U.S.C. 3632(d)(4) and Section 101 of the First Step Act of 2018 (Pub.L. 115–391, December 21, 2018, 132 Stat. 5194) (FSA). . . ." 28 C.F.R. § 523.40.  18 U.S.C. § 3632 provides when a prisoner is ineligible for FSA ETCs.  See 18 U.S.C. § 3632(d)(4)(B) (providing that a prisoner is ineligible for FSA ETCs before § 3632 was enacted and during official detention before the prisoner's sentence has commenced; 3632(d)(4)(D) (listing certain provisions of law and providing that a prisoner is ineligible for FSA ETCs if serving a sentence for a conviction under any of those provisions of law).

"Because this case involves an administrative agency's construction of a statute that it administers, [the Court's] analysis is governed by Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132 (2000). "Under the Chevron framework, a reviewing court first determines if Congress has directly spoken to the precise question at issue, in such a way that the intent of Congress is clear." Mujahid v. Daniels, 413 F.3d 991, 997 (9th Cir. 2005) (internal quotations omitted) (quoting Pacheco-Camacho v. Hood, 272 F.3d 1266, 1268 (9th Cir. 2001) (quoting Chevron, 467 U.S. at 843 internal quotations and citations omitted)). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842–43.

Congress has directly spoken to the precise question of when a prisoner is ineligible for FSA ETCs.  In 18 U.S.C. § 3632(d)(4)(B), a prisoner is explicitly barred from earning credits (1) before the statute was enacted, and (2) during official detention before the prisoner's sentence commences under § 3585(a).  As to the commencement of a sentence, Section 3585(a) unambiguously provides that "[a] term of imprisonment commences" when a prisoner is received in custody awaiting transportation to the official detention facility at which the sentence is to be served. 18 U.S.C. § 3585(a).

1    Accordingly, under 18 U.S.C. § 3632(d)(4)(B)(ii), Petitioner's eligibility for FSA time
2 credits commenced the moment he was sentenced under 18 U.S.C. § 3585(a), because he was in
3 BOP custody.  Because Section 523.42(a) sets a timeline that conflicts with an unambiguous
4 statute, it is not entitled to Chevron deference and the Court must give effect to the statutory text.
5 Other courts to have addressed this issue have come to the same conclusion.  See Yufenyuy v.
6 Warden, FCI Berlin, 2023 WL 2398300, at *4 (D.N.H. 2023) (relying on Chevron to conclude
7 that 28 C.F.R. § 523.42(a) contradicts "the plain language of the FSA, and of § 3585(a), [which]
8 clearly establishes the date upon which the FSA must allow prisoners to start earning FSA time
9 credits" and that "there is no ambiguity in any of the terms of § 3632(d)(4)(A) or (B), regarding
10 when a prisoner's completion of programs will not count for purposes of earning time credits
11 under the FSA"); Huihui v. Derr, 2023 WL 4086073, at *2 (D. Haw. 2023); Patel v. Barron, 2023
12 WL 6311281, at *5 (W.D. Wash. 2023); Umejesi v. Warden, FCI Berlin, 2023 WL 4101455
13 (D.N.H. 2023).
14    The Court concludes that Petitioner should have been afforded an opportunity to earn
15 FSA ETCs toward supervised release from the date he was sentenced, September 14, 2020,
16 because he was already in BOP's custody at the time of sentencing. Accordingly, Petitioner's
17 habeas petition should be granted on this claim, and the BOP should be directed to recalculate
18 Petitioner's time credits.
19    B.    Credit for time intervals
20    From November 16, 2020, through February 3, 2024, the BOP denied Petitioner 333 days
21 of credits.  According to the assessment, Petitioner was denied these days because he was in
22 transit or in "[t]emporary transfer to the custody of another Federal or non-Federal government
23 agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.)." 28
24 C.F.R. § 523.41(c)(4)(iii).  Petitioner contends he should be given FSA credits for the time spent
25 while in transit.  Respondent claims that Petitioner is not entitled to any FSA credit for time spent
26 in transit, citing § 523.41(c)(4)(iii). Respondent is correct.
27    The FSA provides that prisoners "shall earn ... time credits for every 30 days of *successful*
28 *participation in evidence-based recidivism reduction programming*." 18 U.S.C. §

3632(d)(4)(A)(i) (emphasis added). Congress thus made clear that a prisoner earns FSA credits based on the days in which he actively participates in eligible programs. The BOP reasonably interpreted § 3632 in determining that eligible inmates are not "successfully participating" in programming when they are in transit to "the custody of another Federal or non-Federal government agency." Id.; 28 C.F.R. § 523.41(c)(4)(iii). The BOP therefore correctly excluded the 333 days spent in transit when it calculated Petitioner's total FSA credits.

## RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED:

1) Respondent's motion to dismiss the petition be DENIED IN PART and GRANTED IN PART;

2) The petition for writ of habeas corpus be GRANTED on Ground One and DENIED on Ground Two; and

3) Respondent be DIRECTED to recalculate Petitioner's sentence utilizing September 14, 2020, as the correct start date on which Petitioner became eligible to earn FSA credits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to objections are due ten (10) court days from the date of service of objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **April 1, 2024**                        /s/ *Sheila K. Oberto*
                                                 UNITED STATES MAGISTRATE JUDGE